UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSUE ALVARADO, on behalf of<br>himself and all other persons similarly<br>situated, known and unknown, | ) )<br>)<br>) | Case No. 1:18-cv-07756 |
| | ) | |
| Plaintiff, | ) | Judge Pallmeyer |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL LASER PRODUCTS, INC.<br>and INTERNATIONAL TONER CORP. | )<br>) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFF'S MOTION TO VOID RELEASES, TO BAR CONTACTS, FOR ISSUANCE
OF CORRECTIVE NOTICE, AND FOR SANCTIONS

I.      INTRODUCTION

Defendants, with the assistance of their lawyer, Margherita Albarello, have obtained

"settlement agreements" from potential class and collective action members that purport to

release their claims in this lawsuit for cash payments. Because unsupervised waivers and releases

are not valid under the Fair Labor Standards Act ("FLSA") or the Illinois Minimum Wage Law

("IMWL"), Plaintiff moves this Court for an order voiding the releases given by potential class

and collective action members. Also, because Defendants' communications with class members

were improper and interfere with the Court's management of this proposed class and collective

action, Plaintiff seeks an Order barring Defendants, their lawyers, employees and agents, from

any further *ex parte* communications regarding this action with represented parties or potential

class and collective action members, and for a corrective notice to be provided, at Defendants'

expense, to all potential class and collective action members in the form attached hereto as

Exhibit A.  Finally, Plaintiff seeks an order requiring Defendants to provide documents and

information about their contacts with potential class and collective action members, and request a sanction in the amount of Plaintiff's reasonably incurred attorneys' fees and costs in filing this motion.

## II.     BACKGROUND FACTS

Plaintiff filed his Complaint against Defendants on November 21, 2018. ECF No. 1. Defendants were served with a waiver and service of summons on November 21, 2018, and Defendants' Answer or other responsive pleadings were due on or before January 21, 2019. ECF Nos. 7 and 8.

On January 14, 2019, Defendants' Counsel, Margherita Albarello, telephoned Plaintiff's Counsel, Douglas Werman, and asked for a 30-day extension of time to answer or otherwise respond to the Complaint. Ex. B, Werman Declaration, ¶ 3. In exchange for the extension, Defendants agreed to toll the applicable statute of limitations under the FLSA, the IMWL, and the Illinois Biometric Information Privacy Act for the benefit of Plaintiff and all other persons similarly situated . *Id*. During the parties' January 14, 2019 telephone call, the parties also discussed the prospect for early resolution of the lawsuit on a class-wide basis. *Id*. at. ¶ 4. Ms. Albarello agreed that it made sense to explore early resolution of the class-wide claims and the parties discussed the documents Plaintiff's counsel would need to make a settlement proposal. *Id.*

Consistent with the parties' January 14 telephone conversation, on January 15, 2019 Mr. Werman emailed Ms. Albarello a proposed tolling agreement and a list of documents required to facilitate settlement. Ex. B, Werman Decl., ¶ 5, Attach. 1. The email stated,

> We also discussed the possibility of an early resolution. To facilitate that process, we ask that your clients produce to us in an Excel format the time and pay records of all hourly employees employed by Defendants during the 3 year period prior to Plaintiff filing the Complaint. We will then calculate your clients' potential damage exposure and make a settlement proposal. Please let me know how your

2

clients want to proceed.

*Id.* The tolling agreement tolled all potential class and collective action claims under the Fair

Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), and the Illinois

Biometric Information Privacy Act ("BIPA") for all current and former similarly situated

hourly employees of Defendants employed between November 21, 2015 and February 22,

2019. *Id.* On January 18, 2019, Defendants' counsel returned to Plaintiff's counsel a fully

executed tolling agreement. *Id*. at ¶ 6, Attach. 2.

On February 5, 2019, Plaintiff's counsel learned that Defendants were meeting with

potential class and collective action members and were providing them a "settlement

agreement" to sign that, in exchange for a cash payment, purported to release all claims

asserted in the lawsuit. Ex. B, Werman Decl., ¶ 7, Attach. 3. Immediately after learning this

information, on February 5, 2019, Plaintiff's counsel emailed Ms. Albarello and asked her to

confirm whether she and Defendants were communicating with potential class and collective

action members. *Id*. at ¶ 8, Attach. 4. If they were, Plaintiff's counsel requested that

Defendants produce "all communications and documents between Defendants [and Defendants'

counsel's law firm] and absent class members regarding this lawsuit and/or the payments made

to such persons. This includes, but is not limited to, any communications about and any

payments made to satisfy in whole or in part the overtime and the biometric claims in this case,

and/or any release that absent class members were provided or signed." *Id*.

Defendants' counsel responded, in part, by admitting that

"employees have been offered a settlement agreement covering resolution of bona fide
disputes."

Ex. B, Werman Decl., ¶ 9, Attach. 5. Defendants' counsel otherwise refused to provide any

other documents or information about the contacts with potential class and collective action

members, the releases they were given, and payments made to them. *Id.* at ¶ 10, Group

Attach. 6.

Plaintiff's counsel understands – but has been unable to confirm – that Ms. Albarello

was present at meetings where settlement agreements were presented to employees who were

told that they had only days to return executed agreements, and that they would be fired if

they refused to do so. Ex. B, Werman Decl, ¶ 11. Plaintiff's counsel also understands that

employees' immigration status was threatened if they did not return the settlement

agreement. *Id.*

### III.    ARGUMENT

#### A.    The Court Should Void the Settlement Agreements and Releases

Private waivers of minimum wage and overtime claims under the FLSA and IMWL are

void as a matter of public policy. *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2001 WL

1403007, at *2–6 (N.D. Ill. Nov. 9, 2001); *O'Brien v. Encotech Const. Svcs., Inc.*, 183 F. Supp.

2d 1047, 1052 (N.D. Ill. 2002); *Lewis v. Giordano's Enter., Inc.*, 921 N.E.2d 740, 751 (Ill. App.

1st Dist. 2009).[1]

The Seventh Circuit has explained that the FLSA "is designed to prevent consenting

adults from transacting about minimum wages and overtime pay." *Walton v. United Consumers

Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). Given that statutory purpose, "it is necessary to

ban private settlements of disputes about pay" to prevent parties from agreeing to compensation

that is less than required by the FLSA's mandatory minimum or overtime wage provisions. *Id.*

Outside of a court-approved settlement, only the Secretary of Labor may supervise an

---

[1]     These same cases held that private waivers of Illinois Wage Payment and Collection Act
("IWPCA") claims are void as a matter of law. However, this case does not involve any IWPCA
claims.

enforceable waiver and release of an FLSA claim. *O'Brien*, 183 F. Supp. 2d at 1050 (citing

*Walton*, 786. F.2d at 306)); *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir.

1982); *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).

In *O'Brien v. Encotech Const. Svcs., Inc.*, Judge Gottschall voided FLSA, IMWL, and

IWPCA releases that the defendant's owner obtained from employees in exchange for payments

in the middle of a lawsuit. 183 F. Supp. 2d 1047, 1052 (N.D. Ill. 2002). In so holding, Judge

Gottshall reconsidered her previous opinion in the case – that only unsupervised FLSA releases

were invalid – based on Judge Lefkow's opinion in *Ladegaard* (cited above). *Id.* at 1049. Judge

Gottschall agreed with Judge Lefkow that the IMWL and IWPCA "involve public rights and

embody the state's public policy" in establishing a "floor" on the "amount and frequency" of

compensation for employees. *Id.* Since parties are precluded from contracting around the IMWL

and IWPCA, courts must preclude employers from violating those laws and then privately

obtaining waivers from their employees in exchange for payment. *Id.* The Illinois Appellate

Court for the First District cited *O'Brien* and *Ladegaard* with approval and agreed that IMWL

and IWPCA "releases signed by putative class members . . . are void as a matter of law." *Lewis

v. Giordano's Enter., Inc.*, 921 N.E.2d 740, 751 (Ill. App. 1st Dist. 2009).

**B. The Court Should Bar Future Contacts and Order Corrective Notice**

**1. District Courts Have the Power to Regulate the Notice Process and Defendants' Actions Warrant Restraint and Sanctions**

Under Federal Rule of Civil Procedure 23(c), the district court bears responsibility to

direct the "best notice practicable" to class members and to safeguard those members from

unauthorized, misleading communications from the parties or their counsel. *See Erhardt v.

Prudential Group, Inc.,* 629 F.2d 843, 846 (2d Cir. 1980). In *Hoffmann-LaRoche, Inc. v. Sperling,*

493 U.S. 165, 170-71 (1989), the United States Supreme Court held that district courts have

discretion, in appropriate cases, to implement Section 216(b) of the FLSA, 29 U.S.C. § 216(b), by

facilitating notice to potential class members. In so holding, the Supreme Court observed:

> Section 216(b)'s affirmative permission for employees to proceed on behalf of those
> similarly situated must grant the court the requisite procedural authority to manage the
> process of joining multiple parties in a manner that is orderly, sensible, and not otherwise
> contrary to statutory commands or the provisions of the Federal Rules of Civil
> Procedure. It follows that, once an [FLSA] action is filed, the court has a managerial
> responsibility to oversee the joinder of additional parties to assure that the task is
> accomplished in an efficient and proper way.

*Id.* at 170-71. As the *Sperling* Court noted, judicial oversight of communication to potential class

members protects against misleading communications because the court resolves any disputes about

the contents of the notice prior to its distribution. 493 U.S.C. at 171.

Defendants are more than unilaterally communicating both verbally and in writing with

potential class and collective action members regarding their participation in this action.

Defendants are obtaining releases in an effort to settle and compromise the claims of such

persons. "[A] communication may be coercive where the defendant interferes with participation

by potential class members in the lawsuit or misleads them by failing to reveal how some

proposed transaction might affect their rights in the litigation." *Williams v. Sake Hibachi Sushi &*

*Bar, Inc.*, No. 3:18-CV-0517-D, 2018 WL 4539114, at *4 (N.D. Tex. Sept. 21, 2018) This is

what is happening here.

Defendants are also interfering with the Court's duty to oversee and ensure a fair,

unbiased and neutral notification to potential class and collective action members about this

lawsuit. By obtaining "settlement agreements" and releases from potential class and collective

action members, Defendants' plain intent is to deny them access to this Court, under

circumstances that would not have survived the Court's scrutiny.

**C.** **Unapproved and Misleading Communications with Potential Class and Collective Action Members Warrant Protection and Sanctions**

The "settlement agreement" given to potential class and collective action members specifically references this lawsuit. Thus, it is a form of communication about the claims in this lawsuit and is intended to impact potential class and collective action members' ability to participate in the lawsuit. "Unapproved notice to class members which are factually or legally incomplete lack objectivity and neutrality ... [and] will surely result in confusion and adversely affect the administration of justice." *Erhardt,* 629 F.2d at 846. "Unsupervised unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from these statements could well be irreparable." *Kleiner v. First Nat'l Bank of Atlanta,* 751 F.2d 1193, 1203 (11th Cir. 1985) (citing *Zarate v. Younglove,* 86 F.R.D. 80. 90 (C.D. Cal. 1980)). Such conduct clearly warrants restraint.

Courts have readily sanctioned defendants that have engaged in unsupervised contacts with class members for much less detrimental contact then what Defendants and their counsel have done here. *See Erhardt,* 629 F.2d at 845 (enjoining defendants from further communications with class members; ordering defendants to provide new class notice advising class members that previous decisions to opt out were voidable; and imposing monetary sanctions); *Impervious Paint Indus., Inc. v. Ashland Oil,* 508 F. Supp. 720, 723-4 (W.D. Ky. 1981) (imposing injunction upon defendant's attorneys prohibiting contact with class members and restoring class members that opted out to the class); *In Re Federal Skywalk Cases,* 97 F.R.D. 370, 377 (W.D. Mo. 1983) (same); *Kleiner,* 751 F.2d at 1299 (same).

This principal holds true in FLSA collective actions as well. In *Belt v. Emcare*, 299 F. Supp. 2d 664 (E.D. Tex. 2003), the employer issued a communication about the case to potential class members with no prior advance to plaintiffs. The Court concluded the employer's

communication was coercive: "As a letter sent from an employer to its employees, any statements

in Emcare's letter have heightened potential for coercion because where the absent class member

and the defendant are involved in an on ongoing business relationship, such as employer employee,

any communications are more likely to be coercive." *Id*. at 668. The Court concluded a protective

order and corrective notice was warranted.

Even in cases where courts have refrained from imposing complete restraints on

defendant communications with class members, the courts have recognized that misleading

communications or communications designed to influence a class member's decision to participate

in the lawsuit are to be prohibited. *See e.g., Rankin v. Board of Ed. of the Wichita Pub. Schs.,* 174

F.R.D. 695, 697 (D. Kan. 1997); *In re Potash Antitrust Litig.,* 896 F. Supp. 916, 920 (D. Minn.

1995).

As set forth below, Defendants' actions represent a clear undermining of the authority of this Court

to ensure a fair and unbiased notice process in this action. As explained in *Waldo v. Lakeshore Estates,*

*Inc.,* 433 F. Supp. 782, 790-791 (E.D. La. 1977):

> Unapproved communications to class members that misrepresent the status or effect of the
> pending action also have an obvious potential for confusion and/or adversely affecting the
> administration of justice. Particularly should such communications seem vested with official
> authority, there arises not only the risk of subsequent disenchantment with the judicial
> process, but also the danger that individuals will be induced to act to their detriment in
> reliance upon misinformation and/or falsehoods. Thus entailed in this abuse is
> something more than a general interest in orderly process which is shared by the court and
> the public; there is the added interest of the individual in achieving a full and fair
> judicial remedy. To this extent, it is important to recognize the need for restricting free
> expression where such presents a "reasonable likelihood" of endangering the
> individual's constitutional guarantee of a fair trial. (Footnote omitted).

The circumstances in this case warrant the issuance of a protective order and corrective notice. *See Haffer v.*

*Temple Univ.,* 115 F.R.D. 506, 512 (E.D. Pa. 1987) (holding that courts routinely issue restraining orders after

parties initiate improper communications with class members); *accord Hampton Hardware, Inc. v. Cotter & Company, Inc.,* 156 F.R.D. 630 (N.D. Tex. 1994).

### D. **Corrective Notice Is Warranted by Defendants' Conduct**

This Court "h[as] explicit authority to require 'for the protection of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action.'" *Haffer*, 115 F.R.D. at 512 (court issued corrective notice to the class at defendants' expense) (collecting cases); *see Manual for Complex Litigation (Third)*, Section 30.22, at 230 (1995) (the court may require notice to certain class members to correct misinformation or misrepresentations); *Pollar*, 33 Fair Empl. Prac. Cas. (BNA) 1870 (N.D. Cal. 1984) (corrective notice ordered to counteract confusion caused by defendant's conduct); and *Tedesco v. Mishkin*, 629 F. Supp. 1474, 1484 (S.D.N.Y. 1986) (court ordered letter authorized for the purpose of correcting any misconceptions that might have been engendered by defendant's conduct). Here, Defendants are attempting to chill participation of collective action members through its effort to settle claims *ex parte*. They should not be permitted to benefit from their own substantial misconduct that prejudices the rights of the potential class and collective action members. Thus, a corrective notice that 'levels the playing field' should be disseminated to the putative class. *See Impervious Paint Indus., Inc. v. Ashland Oil*, 508 F. Supp. 720, 722 (W.D. Ky. 1981) (circumstantial indications are clear that counsel had full knowledge of their client's intention to attempt to sabotage the class notice – warranting corrective notice to be distributed to the class); *Haffer*, 115 F.R.D. at 512 (defendants shall not be permitted to benefit from their improper communications).

Plaintiff requests that the Court authorize a corrective Notice, in a form attached hereto as Exhibit A, to be inserted into the paystubs of Defendants' current employees and mailed to all

potential class and collective action members.[2] Plaintiff also requests the corrective Notice be

issued at Defendants' expense.

### E.     Defendants Should Be Ordered to Produce Documents Relating to the At-Issue Communications

Defendants should be required to produce to Plaintiff's counsel documents showing each

"settlement agreement" offered to potential class and collective action members, all documents

showing how the monetary offers made to potential class and collective action members were

calculated, and a sworn statement identifying the date(s) that such offers were made and the

names of each person who was present when each such offer was made.

### F.     The Court Should Order Defendants to Pay Attorney's Fees and Costs for Filing this Motion

Where a court concludes that a party has engaged in misleading and/or improper

communications with potential class members, an award of attorney's fees is appropriate.

*Williams*, 2018 WL 4539114 at *6; *Pacheco v. Aldeeb*, 127 F. Supp. 3d 694, 699 (W.D. Tex.

2015) (awarding reasonable attorney's fees and costs associated with sending corrective notice);

*Stransky v. HealthONE of Denver, Inc.*, 929 F. Supp. 2d 1100, 1110–11 (D. Colo. 2013)

(awarding fees and costs because, *inter alia*, defendant "intentionally attempted to undermine the

Court-approved notice," by purposely communicating with the potential class members prior to

issuance of notice); *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 669-70 (E.D. Tex. 2003) (same).

The Court should likewise award attorney's fees and costs here.

## IV.    CONCLUSION

For the foregoing reasons, this Court should (a) void the FLSA, IMWL and BIPA releases

obtained by Defendants; (b) enter a protective order, prohibiting further contacts or

---

[2]     The corrective notice will be translated into Spanish before it is distributed.

10

communications by Defendants, Defendants' employees or agents, and/or Defendants' lawyers, with potential class or collective action members regarding this lawsuit without prior court approval, (c) ordering the provision of corrective notice at Defendants' expense, (d) requiring Defendants to produce documents and information detailing their communications and contacts with potential class and collective action members as requested above, and (e) awarding Plaintiff his reasonably incurred attorney's fees and costs in filing this motion.

Dated:  February 7, 2019

<div style="margin-left:50%">

Respectfully submitted,

/s/ Douglas M. Werman
One of the Attorneys for Plaintiff

</div>

Douglas M. Werman
Maureen A. Salas
Sarah J. Arendt
Zachary C. Flowerree
Werman Salas P.C.
77 West Washington St., Suite 1402
Chicago, Illinois 60602
(312) 419-1008