

FILED

SMM

2/12/2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSUE ALVARADO, on behalf of himself and all other persons similarly situated, known and unknown, | ) ) ) | Case No. 18-cv-07756 |
| | ) | |
| Plaintiff, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL LASER PRODUCTS, INC., INTERNATIONAL TONER CORP., and CRAIG FUNK, individually | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT**

Plaintiff Josue Alvarado ("Plaintiff"), through his attorneys, on behalf of himself and all other persons similarly-situated, known and unknown, for his First Amended Complaint against International Laser Products, Inc. ("ILP"), International Toner Corp. ("ITC"), and Craig Funk, individually (hereinafter "Defendants"), states as follows:

**NATURE OF PLAINTIFF'S CLAIMS**

1.      This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.*, for Defendants' failure to pay overtime wages to Plaintiff and other hourly paid current and former employees (hereafter "similarly-situated employees").

2.      During one or more individual work weeks during the prior three years, Plaintiff and other similarly-situated employees worked for Defendants in excess of forty (40) hours per week but were not paid overtime at a rate of one and one-half times their regular rates of pay.

3.      Plaintiff brings his FLSA claim as a collective action pursuant to 29 U.S.C. §

216(b). Plaintiff's consent form to act as representative party plaintiff in this FLSA overtime lawsuit is attached hereto as Exhibit A.

4.     Plaintiff brings his IMWL claim as a class action pursuant to Fed. R. Civ. P. 23.

5.     Plaintiff also brings a Biometric Information Privacy Act ("BIPA") claim as a class action pursuant to Fed. R. Civ. P. 23.

**JURISDICTION AND VENUE**

6.     This Court has jurisdiction over Plaintiff's FLSA claim, arising under 29 U.S.C. § 216(b), pursuant to 28 U.S.C. § 1331.

7.     This Court has supplemental jurisdiction over Plaintiff's IMWL and BIPA class claims pursuant to 28 U.S.C. § 1367.

8.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because the facts and events giving rise to Plaintiff's claims occurred in this judicial district.

**THE PARTIES**

9.     Plaintiff resides in and is domiciled in this judicial district.

10.     Defendant ILP is an Illinois corporation.  Defendant ILP is an "enterprise" as that term is defined in Section 203(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1).

11.     Defendant ILP is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 203(s)(1)(A) of the FLSA. 29 U.S.C. § 203(s)(1)(A).

12.     During the last three years, Defendant ILP's annual gross volume of sales made or business done has exceeded $500,000.00, exclusive of excise taxes.

13.     During the course of his employment with Defendant ILP, Plaintiff handled goods that moved in interstate commerce.

14.     Defendant ILP was Plaintiff's "employer" as that term is defined by the FLSA. 29

U.S.C. § 203(d).

15.     Defendant ILP was Plaintiff's "employer" as defined by the IMWL. 820 ILCS 105/3(c).

16.     Plaintiff was Defendant ILP's "employee" as that term is defined by the FLSA. 29 U.S.C. § 203(e)(1).

17.     Plaintiff was Defendant ILP's "employee" as defined by the IMWL. 820 ILCS 105/3(d).

18.     Defendant ITC is an Illinois corporation.  Defendant ITC is an "enterprise" as that term is defined in Section 203(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1).

19.     Defendant ITC is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 203(s)(1)(A) of the FLSA. 29 U.S.C. § 203(s)(1)(A).

20.     During the last three years, Defendant ITC's annual gross volume of sales made or business done has exceeded $500,000.00, exclusive of excise taxes.

21.     During the course of his employment with Defendant ITC, Plaintiff handled goods that moved in interstate commerce.

22.     Defendant ITC was Plaintiff's "employer" as that term is defined by the FLSA. 29 U.S.C. § 203(d).

23.     Defendant ITC was Plaintiff's "employer" as defined by the IMWL 820 ILCS 105/3(c).

24.     Plaintiff was Defendant ITC's "employee" as that term is defined by the FLSA. 29 U.S.C. § 203(e)(1).

25.     Plaintiff was Defendant ITC's "employee" as defined by the IMWL. 820 ILCS 105/3(d).

26.     Defendant Craig Funk is the president, owner, and operator of Defendant ILP.

27.     Defendant Funk is involved in the day-to-day business operations of Defendant ILP.

28.     Defendant Funk hires and fires ILP employees, directs and supervises the work of ILP employees, signs on Defendant ILP's checking accounts, and makes decisions regarding employee compensation and capital expenditures.

29.     Defendant Craig Funk is the president, owner, and operator of Defendant ITC.

30.     Defendant Funk is involved in the day-to-day business operations of Defendant ITC.

31.     Defendant Funk hires and fires ITC employees, directs and supervises the work of ITC employees, signs on Defendant ITC's checking accounts, and makes decisions regarding employee compensation and capital expenditures.

32.     Defendant Funk was Plaintiff's "employer" as that term is defined by the FLSA. 29 U.S.C. § 203(d).

33.     Defendant Funk was Plaintiff's "employer" as that term is defined by the IMWL, 820 ILCS 105/3(c).

34.     Plaintiff was Defendant Funk's "employee" as that term is defined by the FLSA. 29 U.S.C. § 203(e)(1).

35.     Plaintiff was Defendant Funk's "employee" as defined by the IMWL, 820 ILCS 105/3(d).

36.     Each Defendant is a "private entity" under the Biometric Information Privacy Act. 740 ILCS 14/10.

**BACKGROUND FACTS**

4

37.     ITC is a Standardized Test Methods Committee certified manufacturer, distributor, and recycler of toner cartridges and related imaging supplies. https://www.linkedin.com/company/international-toner/.

38.     ITC is located at 1081 Johnson Drive, Buffalo Grove, IL 60089.

39.     ILP is a contract re-manufacturer and global distributor of laser, fax and copier cartridges, exclusively for resale.  http://intllaser.com/.

40.     ILP is located at 190 Carpenter Avenue, Wheeling, IL 60090.

41.     ILP and ITC operate as a unified operation and a common enterprise, with a common business purpose.

42.     Defendants ILP and ITC are joint employers of Plaintiff.

43.     Defendants ILP and ITC share common ownership.

44.     Defendants ILP and ITC have common management, including the same President, Defendant Funk.

45.     Defendants ILP and ITC operate from the same physical location in Wheeling, Illinois.

46.     Plaintiff performed work for ILP and ITC at the same location on Carpenter Avenue in Wheeling, Illinois.

47.     Defendants share the same pool of employees, including Plaintiff, who perform work for both ITC and ILP in the same work weeks.

48.     Defendants hold themselves out to the public using a common website: http://www.intllaser.com.

49.     Defendants use the same vendors and suppliers.

50.     Defendants share many of the same customers.

51.     From approximately February 2018 until approximately September 4, 2018, Plaintiff worked for Defendants as an hourly employee.

52.     During the last three years, Defendants employed other hourly employees. In one or more weeks during the prior three (3) years, Plaintiff worked for one or more Defendants in excess of forty (40) hours.

53.     For example, Plaintiff customarily worked approximately seventy-six (76) hours per week: Monday through Friday from approximately 5:00 am to 7:00 pm and Saturdays from 5:00 am to 2:00 pm.

54.     During his employment, Defendants did not pay Plaintiff overtime pay at a rate of one and one-half times his regular rate of pay when he worked more than forty (40) hours per work week.

55.     In one or more weeks during the prior three (3) years, Defendants did not pay other hourly employees overtime pay at a rate of one and one-half times their regular rates of pay when they worked more than forty (40) hours per work week.

56.     Instead, Defendants split the hours that Plaintiff and other hourly employees worked for ILP and ITC in the same work week into two checks and compensated all hours worked, including hours worked over 40 in the same week at employees' straight time regular rate of pay for all time worked.  See Group Ex. B.

57.     Defendants' biometric timekeeping system required Plaintiff and other employees to scan their fingerprints to record when they clocked in or out of a shift.

58.     Approximately three weeks before Defendants terminated Plaintiff, Plaintiff asked his supervisor, Carlos, when Defendants were going to start paying Plaintiff overtime. Carlos told Plaintiff that Defendants did not pay overtime.

6

59.     On approximately September 4, 2018, Plaintiff was called into Carlos' office during his shift and was told that his production requirements had increased. Plaintiff complained that he was not receiving overtime. Carlos responded that Plaintiff was fired.

### COUNT I
### Violation of the Fair Labor Standards Act – Overtime Wages
### (Plaintiff on his own behalf and on behalf of similarly-situated employees)

Plaintiff hereby realleges and incorporates paragraphs 1 through 59 of this Complaint, as if fully set forth herein.

60.     This count arises from Defendants' willful violation of the FLSA, 29 U.S.C. § 201 *et seq.,* for their failure to pay Plaintiff and other similarly-situated employees overtime wages at a rate of one and one-half times their regular rate of pay for all time worked over forty (40) hours during individual work weeks.

61.     In one or more work weeks during the prior three years, Plaintiff and similarly-situated employees worked for Defendants in excess of forty (40) hours per week.

62.     Pursuant to 29 U.S.C. § 207, Plaintiff was entitled to be compensated at a rate of one and one-half times his regular rate of pay for all time he worked in excess of forty (40) hours during individual work weeks.

63.     In one or more work weeks during the last three (3) years, Defendants did not pay Plaintiff one and one-half times his regular rate for the time he worked over forty (40) hours in individual work weeks, and instead paid him his straight time regular rate for all time worked.

64.     Pursuant to 29 U.S.C. § 207, other similarly-situated employees were entitled to be compensated at a rate of one and one-half times their regular rates of pay for all time they worked in excess of forty (40) hours during individual work weeks.

65.     In one or more work weeks during the last three (3) years, Defendants did not pay

similarly-situated employees one and one-half times their regular rates of pay for all time worked over forty (40) hours in individual work weeks, and instead paid them at their straight time regular rates for all time worked.

66.     Defendants violated the FLSA by failing to pay Plaintiff overtime wages for hours worked in excess of forty (40) hours in one or more individual work weeks.

67.     Defendants violated the FLSA by failing to pay similarly-situated employees overtime wages for hours worked in excess of forty (40) hours in one or more individual work weeks.

68.     During his employment with Defendants, Plaintiff was given only two separate, 15-minute breaks per work shift.

69.     Other similarly-situated employees typically received only two separate, 15-minute breaks per work shift.

70.     In one or more work weeks during the last three (3) years, Defendants deducted thirty (30) minutes from Plaintiff's hours worked to account for the two 15-minute breaks during his shift.

71.     In one or more work weeks during the last three (3) years, Defendants deducted thirty (30) minutes per shift from the hours worked by similarly-situated employees to account for these two 15-minute breaks.

72.     Pursuant to 29 C.F.R. § 786.18, breaks for a period of 20 minutes or less must be counted as compensable hours worked under the FLSA. *Id.*

73.     Defendants violated the FLSA by failing to pay Plaintiff for the two 15-minute breaks he was afforded each shift.

74.     Defendants violated the FLSA by failing to pay similarly-situated employees for

8

the two 15-minute breaks they were given each shift.

75.     As a direct and proximate result of Defendants' willful violations of the FLSA,

Plaintiff and other similarly-situated employees have suffered a loss of income and other damages.

They are entitled to liquidated damages and attorneys' fees and costs incurred in pursing this claim.

WHEREFORE, Plaintiff and other similarly-situated employees pray for a judgment

against Defendants as follows:

A.      designation of this action as a collective action and prompt issuance of notice to
        similarly-situated employees pursuant to 29 U.S.C. § 216(b) appraising them of the
        pendency of this action, and permitting them to assert timely FLSA claims in this
        action by filing individual consent forms pursuant to 29 U.S.C. § 216(b);

B.      judgment in the amount of the overtime wages owed to Plaintiff and all other
        similarly-situated employees who join this lawsuit;

C.      liquidated damages in an amount equal to the amount of unpaid overtime wages;

D.      reasonable attorneys' fees and costs incurred in the filing and prosecution of this
        action; and

E.      such other and further relief as this Court deems just and proper.

**COUNT II**
**Violation of the Fair Labor Standards Act – Retaliation**
**(Plaintiff, individually)**

Plaintiff hereby realleges and incorporates paragraphs 1 through 75 of this Complaint, as

if fully set forth herein.

76.     This count arises from Defendants' violation of the FLSA, 29 U.S.C. § 201, *et*

*seq.,* for terminating Plaintiff in retaliation for his complaint about not being paid overtime as

required by law.

77.     Approximately three weeks after Plaintiff asked his supervisor when Defendants

would start paying him overtime, Defendants increased Plaintiff's daily production requirements.

78.     When Plaintiff complained to his supervisor that he was not receiving overtime

9

pay, Defendants terminated Plaintiff's employment.

79.     Section 215(a)(3) of the FLSA prohibits an employer from discharging or

discriminating against an employee because an employee has filed a complaint under the FLSA.

29 U.S.C. § 215(a)(3).

80.     Defendants discriminated and retaliated against Plaintiff because he complained

that he was not being paid overtime pay pursuant to the FLSA.

81.     Defendants violated the FLSA by discriminating against and retaliating against

Plaintiff because he complained about not receiving overtime pay pursuant to the FLSA.

82.     As a direct and proximate result of Defendants' willful violation of the FLSA,

Plaintiff has suffered emotional distress and other damages. He is entitled to liquidated damages

and attorneys' fees and costs incurred in pursing this claim.

        WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

A.      Damages for emotional distress caused by Plaintiff's unlawful termination from
        employment;

B.      Reasonable attorneys' fees and costs incurred in the filing and prosecution of this
        action; and

C.      Such other and further monetary and non-monetary relief available to Plaintiff
        under the FLSA and as this Court deems just and proper.

**COUNT III**
**Violation of the Illinois Minimum Wage Law – Overtime Wages**
**(Class Action)**

        Plaintiff hereby realleges and incorporates paragraphs 1 through 82 of this Complaint, as

if fully set forth herein.

83.     This count arises from Defendants' violation of the IMWL, 820 ILCS 105/1 *et seq.*,

for their failure to pay Plaintiff and members of the overtime class he seeks to represent overtime

pay at a rate of one and one-half times their regular rate of pay for all time worked in excess of

10

forty (40) hours during individual work weeks.

84.     During the prior three years, Defendants required Plaintiff to work more than forty (40) hours in one or more individual work weeks.

85.     Other similarly-situated employees were required by Defendants to work more than forty (40) hours in one or more individual work weeks.

86.     For all time worked in excess of forty (40) hours in an individual work week, Plaintiff was entitled to be paid one and one-half times his regular rate of pay.

87.     Defendants' other similarly-situated employees were entitled to be paid one and one-half times their regular rates of pay when they worked more than forty (40) hours in an individual work week.

88.     Defendants did not pay Plaintiff overtime at one and one-half times his regular rate, and instead paid Plaintiff his straight time regular rate for all time worked over forty (40) hours during one or more individual work weeks.

89.     Defendants did not pay similarly-situated employees overtime at one and one-half times their regular rates, and instead paid them their straight time regular rates for all time worked, including time worked in excess of forty (40) hours, during one or more individual work weeks.

90.     The number of similarly-situated employees who worked for Defendant in Illinois in the prior three years and who were not paid overtime at one and one-half times their regular rates of pay when they worked more than forty (40) hours per week (the "Overtime Class") exceeds 40 individuals over the last three (3) years.

91.     Defendants' failure to pay Plaintiff and the Overtime Class at one and one-half times their regular rates of pay when they worked more than forty (40) hours per week violated the overtime wage provisions of the IMWL, 820 ILCS 105/4a.

11

92. This Count is brought pursuant to Fed. R. Civ. P. 23 because the Overtime Class is so numerous that joinder of all members is impracticable.

93. Plaintiff and the Overtime Class are equally affected by Defendants' overtime violations, and relief is sought for the benefit of Plaintiff and the Overtime Class Plaintiff seeks to represent.

94. The issues involved in this Count present common questions of law and fact.

95. Those common questions of law and fact predominate over any variations which may exist between members of the Overtime Class Plaintiff seeks to represent.

96. Plaintiff and the class of similarly-situated employees, on one hand, and Defendants on the other, have a commonality of interest in the subject matter and remedy sought, namely owed overtime wages plus penalties, interest, attorneys' fees, and the cost of the litigation.

97. The overtime violations alleged by Plaintiff are the result of Defendants' generally-applicable policies and practices, and the common questions presented will predominate over any individual questions in this action.

98. Plaintiff believes and asserts that he is able to fairly and adequately represent and protect the interests of the overtime class.

99. Plaintiff's counsel is highly-experienced in the prosecution of wage-and-hour class actions.

100. If individual actions were required to be brought by each member of the Overtime Class injured or affected by Defendants' overtime violations, it would necessarily result in a multiplicity of lawsuits, creating a hardship to the individuals and to the Court, as well as to Defendants.

101. A class action is a superior method for the fair and efficient adjudication of this

lawsuit and distribution of the common fund to which the Overtime Class is entitled.

102.    Pursuant to 820 ILCS 105/12(a), Plaintiff and the Overtime Class he seeks to represent are entitled to recover overtime wages for up to three years prior to the filing of this lawsuit, plus punitive damages in an amount of two percent (2%) per month of the amount of the underpayments.

WHEREFORE, Plaintiff and the Overtime Class pray for judgment against Defendants as follows:

A.    A determination that his action may be maintained as a class action under Fed. R. Civ. P. 23;

B.    A judgment in the amount of all overtime wages owed to Plaintiff and the overtime class members under the IMWL;

C.    Punitive damages pursuant to the formula set forth in 820 ILCS 105/12(a);

D.    Reasonable attorneys' fees and costs incurred in the filing and prosecution of this action as provided in 820 ILCS 105/12(a); and

E.    Such other and further relief as this Court deems just and proper.

**COUNT IV**
**Violation of the Biometric Information Privacy Act**
**(Class Action)**

Plaintiff hereby realleges and incorporates paragraphs 1 through 102 of this Complaint, as if fully set forth herein.

103.    In enacting the Biometric Information Privacy Act, the Illinois legislature recognized that the full ramifications of biometric technology are not yet fully known and so the public will benefit from "regulations on the collection, use, safeguarding, handling, storage retention, and description of biometric identifiers and information." 740 ILCS 14/5(f)-(g).

104.    The Biometric Information Privacy Act prohibits a "private entity" from capturing or collecting biometric identifiers or information from an individual unless that private entity first

obtains the individual's written consent or employment-related release authorizing the private entity to capture or collect an individual's biometric identifiers and/or biometric information. 740 ILCS 14/15(b)(3).

105.    The Biometric Information Privacy Act prohibits a private entity from capturing or collecting biometric identifiers or information from an individual unless that private entity first informs the individual, in writing, of the following: (a) that the private entity is collecting biometric identifiers or information, (b) the purpose of such collection, and (c) the length of time the private entity will retain the biometric identifiers or information. 740 ILCS 14/15(b)(1)(b).

106.    In addition, the Biometric Information Privacy Act prohibits a private entity from possessing biometric identifiers or information unless it first creates a written policy, made available to the public, establishing a retention schedule and destruction guidelines for its possession of biometric identifiers and information. 740 ILCS 14/15(a).

107.    Finally, the Biometric Information Privacy Act prohibits a private entity from disclosing or otherwise disseminating biometric identifiers or information without first obtaining an individual's consent for that disclosure or dissemination, unless the disclosure or dissemination was (a) in furtherance of an authorized financial transaction, (b) authorized by law, or (c) pursuant to a valid warrant or subpoena. 740 ILCS 14/15(d). Defendants collected, stored, used, and transferred the unique biometric fingerprint identifiers of Plaintiff and others similarly situated without following the strictures of the Biometric Information Privacy Act.

108.    Defendants did not provide Plaintiff any written materials about their collection, retention, destruction, use, or dissemination of Plaintiff's fingerprint.

109.    Defendants never obtained Plaintiff's written consent, or release as a condition of continued employment, before collecting, storing, disseminating, or using Plaintiff's fingerprint.

14

110.    Defendants diminished the value of Plaintiff's biometric identifiers and information by storing them without publishing data retention and destruction policies required by the Biometric Information Privacy Act.

111.    Plaintiff seeks to represent a class that is comprised of and defined as:

> Production Laborers and other hourly paid workers employed in Illinois by Defendants who were required to scan their fingerprints in Defendants' timekeeping system (the "BIPA Class").

112.    Plaintiff's and the BIPA Class' fingerprints and/or scan of fingers each qualify as "biometric identifier[s]" as defined by the Biometric Information Privacy Act. 740 ILCS 14/10.

113.    Defendants have "biometric information" from Plaintiff and the BIPA Class based on their acquisition and retention of Plaintiff's and the Class' "biometric identifier[s]," as defined in the previous paragraph.

114.    Plaintiff and the BIPA Class are similarly situated to one another because they were all subject to the same allegedly illegal practices: being required to scan their fingerprints in Defendants' timekeeping system despite Defendants failing to adhere to the requirements of the Biometric Information Privacy Act.

115.    The issues involved in this Count present common questions of law and fact, including: whether Defendants required the BIPA Class to use their fingerprints in Defendants' timekeeping system to clock in or out of shifts; whether the Class' fingerprints qualify as "biometric identifiers" or "biometric information" under the Biometric Information Privacy Act; and whether Defendants complied with the procedures of the Biometric Information Privacy Act.

116.    These common questions of law and fact predominate over the variations that may exist between members of the BIPA Class, if any.

117.    Plaintiff, the members of the BIPA Class, and Defendants have a commonality of

interest in the subject matter of the lawsuit and the remedy sought.

118.    If individual actions were required to be brought by each member of the BIPA Class injured or affected, the result would be a multiplicity of actions, creating a hardship to the Class, to the Court, and to Defendants.

119.    A class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the BIPA Class are entitled.

120.    Plaintiff and his counsel will fairly and adequately protect the interests of the BIPA Class.

121.    Plaintiff retained counsel experienced in complex class action litigation.

122.    Defendants violated the Biometric Information Privacy Act by capturing or collecting Plaintiff's and the BIPA Class' fingerprints and/or scans of fingers without first informing them in writing of the purpose of Defendants doing so and the length of time Defendants would store and use Plaintiff's and the BIPA Class' biometric identifiers and/or biometric information.

123.    Defendants violated the Biometric Information Privacy Act by capturing or collecting Plaintiff's and the BIPA Class' fingerprints and/or scans of fingers without first obtaining their written consent or other release authorizing Defendants to capture or collect Plaintiff's and the BIPA Class' biometric identifiers and/or biometric information.

124.    Defendants violated the Biometric Information Privacy Act by possessing Plaintiff and the BIPA Class' fingerprints and/or scans of fingerprints without creating a written policy, made available to the public, establishing a retention schedule and destruction guidelines for its possession of biometric identifiers and information.

125.    Defendants violated the Biometric Information Privacy Act by, on information and

16

belief, disclosing or otherwise disseminating Plaintiff's and the BIPA Class' fingerprints and/or scans of fingers to their timekeeping system provider without first obtaining Plaintiff's and the BIPA Class' consent for that disclosure or dissemination.

126.    Defendants knew or should have known of the requirements of the Biometric Information Privacy Act.

127.    As a result, Defendants' violations of the Biometric Information Privacy Act were reckless or, in the alternative, negligent.

WHEREFORE, Plaintiff and the BIPA Class pray for a judgment against Defendants as follows:

A.    Awarding liquidated monetary damages to Plaintiff and the BIPA Class for each violation of the Biometric Information Privacy Act as provided by 740 ILCS 14/20(1)-(2);

B.    Enjoining Defendants from committing further violations of the Biometric Information Privacy Act as authorized by 740 ILCS 14/20(4);

C.    Awarding Plaintiff's reasonable attorneys' fees and costs incurred in filing and prosecuting this action as provided by 740 ILCS 14/20(3); and

D.    Such other and further relief as this Court deems appropriate and just as provided by 740 ILCS 14/20(4).

Respectfully submitted,

Dated:  February 7, 2019            /s/Douglas M. Werman
                                    One of Plaintiff's Attorneys

Douglas M. Werman (dwerman@flsalaw.com)
Maureen A. Salas (msalas@flsalaw.com)
Sarah J. Arendt (sarendt@flsalaw.com)
Werman Salas P.C.
77 West Washington St., Suite 1402
Chicago, Illinois 60602
(312) 419-1008

Attorneys for Plaintiff

17

# EXHIBIT A

# CONSENT FORM

I was employed by International Laser Products, Inc. and International Toner Corp., and/or their parents, subsidiary or affiliated companies during the prior three (3) years, and in one or more of those weeks was not paid all the overtime pay owed to me as required by 29 U.S.C. § 201 *et seq*. I authorize the filing and prosecution of this Fair Labor Standards Act action in my name and on behalf of all persons similarly situated to myself.

My name is:    Josue Alvarado

Your signature: _____

# EXHIBIT B

```
003257
CO.     FILE    DEPT.   CLOCK   NUMBER    060
839     100164  121000          0001874468  1
```

INTERNATIONAL LASER PRODUCTS, INC.
1081 JOHNSON DRIVE
BUFFALO GROVE, IL 60089

# Earnings Statement



Period Beginning:    07/23/2018
Period Ending:       08/05/2018
Pay Date:            08/10/2018

Taxable Marital Status:    Married
Exemptions/Allowances:
    Federal:        6
    IL:             6

JOSUE ALVARADO

# REDACTED

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 10.5000 | 80.00 | 840.00 | 9,649.08 |
| Holiday | | | | 168.00 |
| Gross Pay | | | $840.00 | 9,817.08 |

| Deductions | | this period | year to date |
|---|---|---|---|
| Statutory | | | |
| Social Security Tax | | -52.08 | 608.66 |
| Medicare Tax | | -12.18 | 142.35 |
| IL State Income Tax | | -18.73 | 211.77 |
| Other | | | |
| Advance | | -80.00 | 320.00 |
| Net Pay | | $677.01 | |
| Net Check | | $677.01 | |

Your federal taxable wages this period are $840.00





©1998 2YVR  ADP, LLC. All Rights Reserved

▲ TEAR HERE

```
002982
CO.    FILE    DEPT.   CLOCK  NUMBER   060
799    006083  110100         0001874429  1
```

# Earnings Statement



INTERNATIONAL TONER CORP
1081 JOHNSON DRIVE
BUFFALO GROVE, IL 60089

Period Beginning:    07/23/2018
Period Ending:       08/05/2018
Pay Date:            08/10/2018

Taxable Marital Status:   Single
Exemptions/Allowances:
    Federal:        0
    IL:             0

JOSUE ALVARADO

# REDACTED

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 10.5000 | 56.50 | 593.25 | 4,882.50 |
| Gross Pay | | | $593.25 | 4,882.50 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -46.79 | 367.75 |
| | Social Security Tax | -36.79 | 302.72 |
| | Medicare Tax | -8.61 | 70.80 |
| | IL State Income Tax | -29.37 | 241.71 |
| | **Other** | | |
| | Advance | | 80.00 |
| | Net Pay | | $471.69 |
| | Net Check | | $471.69 |

Your federal taxable wages this period are $593.25

©1998, 2006. ADP, LLC All Rights Reserved.



```
001708
CO.    FILE    DEPT.    CLOCK    NUMBER ;    060
839    100164  121000            0001625279  1
```

## Earnings Statement



INTERNATIONAL LASER PRODUCTS, INC.
1081 JOHNSON DRIVE
BUFFALO GROVE, IL 60089

| | |
|---|---|
| Period Beginning: | 04/30/2018 |
| Period Ending: | 05/13/2018 |
| Pay Date: | 05/18/2018 |

Taxable Marital Status:   Married
Exemptions/Allowances:
    Federal:         6
    IL:              6

JOSUE ALVARADO

# REDACTED

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 10.5000 | 80.00 | 840.00 | 4,781.49 |
| Gross Pay | | | $840.00 | 4,781.49 |

| Deductions | Statutory | | | |
|---|---|---|---|---|
| | Social Security Tax | -52.08 | | 296.45 |
| | Medicare Tax | -12.18 | | 69.33 |
| | IL State Income Tax | -18.73 | | 99.60 |
| Net Pay | | $757.01 | | |
| | | | | |
| Net Check | | $757.01 | | |

Your federal taxable wages this period are $840.00





©1998, 2006, ADP, LLC All Rights Reserved.

▲ TEAR HERE

001527
CO. FILE DEPT. CLOCK NUMBER 060
**799** 006083 110100 0001625247 1

*INTERNATIONAL TONER CORP*
*1081 JOHNSON DRIVE*
*BUFFALO GROVE, IL 60089*

## Earnings Statement 

Period Beginning: 04/30/2018
Period Ending: 05/13/2018
Pay Date: 05/18/2018

Taxable Marital Status: Single
Exemptions/Allowances:
    Federal: 0
    IL: 0

JOSUE ALVARADO

# REDACTED

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 10.5000 | 57.00 | 598.50 | 1,737.75 |
| Gross Pay | | | $598.50 | 1,737.75 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -47.42 | 135.33 |
| | Social Security Tax | -37.11 | 107.74 |
| | Medicare Tax | -8.68 | 25.20 |
| | IL State Income Tax | -29.63 | 86.03 |
| Net Pay | | $475.66 | |
| Net Check | | $475.66 | |

Your federal taxable wages this period are $598.50

©1998, 2006, ADP, LLC All Rights Reserved.



▲ TEAR HERE