```
           IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION


JOSUE ALVARADO, on behalf of  )
himself and all other         )
persons similarly situated,   )  Docket No. 18 C 7756
known and unknown,            )
                              )
              Plaintiff,      )
                              )
         vs.                  )
                              )
INTERNATIONAL LASER           )
PRODUCTS, INC.,               )
INTERNATIONAL TONER CORP.,    )
and CRAIG FUNK,               )
individually,                 )  Chicago, Illinois
                              )  February 12, 2019
              Defendants.     )  8:56 a.m.


         TRANSCRIPT OF PROCEEDINGS - Motion
     BEFORE THE HONORABLE REBECCA R. PALLMEYER

APPEARANCES:

For the Plaintiff:      WERMAN SALAS P.C.
                        BY:  MR. DOUGLAS M. WERMAN
                             MS. SARAH J. ARENDT
                        77 West Washington, Suite 1402
                        Chicago, Illinois  60602


For the Defendants:     DiMONTE & LIZAK
                        BY:  MS. MARGHERITA M. ALBARELLO
                        216 West Higgins Road
                        Park Ridge, Illinois  60068


Court Reporter:         FRANCES WARD, CSR, RPR, RMR, FCRR
                        Official Court Reporter
                        219 S. Dearborn Street, Suite 2144D
                        Chicago, Illinois  60604
                        (312) 435-5561
                        frances_ward@ilnd.uscourts.gov
```

| | |
|---|---|
| 1 | THE CLERK: 18 C 7756, Alvarado versus |
| 2 | International Laser Products on a motion. |
| 3 | MR. WERMAN: Good morning, Judge. |
| 4 | Doug Werman, W-e-r-m-a-n, on behalf of the |
| 5 | plaintiff. |
| 6 | THE COURT: Good morning, Mr. Werman. |
| 7 | MR. WERMAN: Good morning. |
| 8 | MS. ARENDT: Good morning, Judge. |
| 9 | Sarah Arendt, A-r-e-n-d-t, on behalf of the |
| 10 | plaintiff. |
| 11 | MS. ALBARELLO: Good morning, your Honor. |
| 12 | Margherita Albarello, A-l-b-a-r-e-l-l-o, on behalf |
| 13 | of the defendants. |
| 14 | THE COURT: Good morning. |
| 15 | I have seen the motion. What's the defendants' |
| 16 | position. |
| 17 | MS. ALBARELLO: The defendants' position is that we |
| 18 | would like to file a response. |
| 19 | But I will say right now to the Court that we did |
| 20 | communicate with the putative class members. There has been |
| 21 | no class certification yet. There were no coercion or |
| 22 | threats, nor is there a sworn statement in the submissions by |
| 23 | the plaintiffs that there were coercion or threats. |
| 24 | I'm not aware of anything that prevents the |
| 25 | defendants, with regard to the wage and hour releases, from |

1  seeking an approval of those releases either with the Court
2  or with the U.S. Department of Labor.
3           There are another -- there is another part of the
4  release that is unrelated to the wage and hour claims, and
5  that is a release that pertains to the Illinois Biometric
6  Privacy Act claim.  The case law is very clear that the
7  defendants have the right to communicate with the putative
8  class members with regard to that, seek releases, and that
9  those releases are enforceable.
10          THE COURT:  Mr. Werman, do you want to respond?
11          MR. WERMAN:  Judge, I got to tell you, the kind of
12 deceitful conduct that went on here is really just
13 astounding.
14          We were contacted, after we filed this case, by
15 Ms. Albarello.  She asked for an extension of time to answer
16 the complaint.  She provided us a tolling agreement.  She
17 agreed to provide us time and pay records so that we could
18 talk to her and her client about an early resolution of the
19 litigation.
20          What she did instead was to meet with the potential
21 class members, to meet with the potential opt-in plaintiffs,
22 and obtain releases from them.
23          There is no doubt that this happened.  She
24 acknowledged it in court.  It's improper under the rules.  It
25 interferes with the Court's ability to supervise the class

1    litigation, the communications with class members.

2            We would like to take some discovery at the
3    appropriate time about exactly what Ms. Albarello -- what her
4    conduct was with respect to the actual communications that
5    were made with the class -- with potential class members.  We
6    understand that it was coercive, that people were given short
7    dates to return their releases, that people's immigration
8    status may have been threatened.

9            We understand that Ms. Albarello may have been
10   involved in actually meeting with individuals.

11           So we would ask for five different forms of relief.

12           One is, the Court should void the releases.  The
13   Seventh Circuit says the releases aren't valid.  And to my
14   knowledge, every court that's addressed the issue in the
15   Northern District of Illinois has found these releases --
16   these kind of releases to be void.  They are void.

17           We also want an injunction.  Essentially we want a
18   bar order stopping her and her client from communicating with
19   the potential opt-in plaintiffs.  Also the case law supports
20   that.  She has acknowledged that communications are
21   happening.  She seems to be acknowledging communications are
22   continuing to occur.  That's number two.

23           Three, we want a corrective notice to be sent.  We
24   have attached the form of the corrective notice.  That ought
25   to go.  That ought to go out because there is no dispute that

1  the conduct happened. It's not in dispute.
2  　　　　We want to know what they have been doing. We
3  asked them to produce to us copies of the releases, who they
4  have communicated with, the written communications that they
5  may have given to class members. She has refused to provide
6  that to us. I have asked her to produce it. She has
7  refused.
8  　　　　And we want our fees for having to chase this down.
9  　　　　Those are the five forms of relief that she want.
10 　　　　If she wants to file a response, that's up to the
11 Court, but it needs to be done on an expedited basis.
12 　　　　THE COURT: I'm inclined to allow a very short time
13 for a response, and by that I mean 48 hours.
14 　　　　I will tell you that what happened in this case was
15 a surprise to the Court. I have had probably dozens of FLSA
16 cases. I have lost count. I'm not familiar with this kind
17 of conduct. To me, it seems like the kind of thing -- it
18 sounds like communicating with a represented party. I
19 realize there is no -- I haven't made the conditional
20 determination here. I haven't certified a class. I
21 recognize all that.
22 　　　　In light of the fact that you had communications
23 with Mr. Werman or one of his colleagues and agreed to a
24 tolling agreement and the like strikes me that you understood
25 that his role was to represent these individuals and attempt

1    to get relief for them.
2             So to communicate directly in an attempt evidently
3    to pick off members of the group seems improper, and indeed
4    the case law that Mr. Werman and his colleagues cited
5    suggests that it is.  I am not familiar with this kind of
6    conduct.  It strikes me as wrong.
7             I do need to see a response.  You are telling me
8    it's authorized under some legislation or another, but it
9    seems to me, with respect to the Fair Labor Standards Act
10   claims, it's not appropriate to try to -- once you've
11   communicated with counsel, to try to run around behind him
12   and cut deals with the individuals.
13            Whether or not there has actually been coercion, I
14   don't know.  If that has happened -- and Mr. Werman seems to
15   think it has -- I think we can all agree that would not be an
16   appropriate way to negotiate.
17            So 48 hours for a response.  Today is the 12th of
18   February.  So we will be looking at another hearing on
19   this -- how about this Friday, the 15th, at 10:00 o'clock?
20            MS. ALBARELLO:  Your Honor, I would respectfully
21   ask for one more day.  I will -- I am prepared -- I will
22   represent to the Court that between now and those three days
23   that my client will not have any communication with its
24   employees regarding this litigation.
25            I simply cannot turn around a response in 48 hours.

1           I will also add, your Honor, that what Mr. Werman
2   has said to you is patently false.  And if you look at the
3   email communications that he attached between he and I as
4   part of his motion, you will see that there was never any
5   promise by me or anyone else representing the defendants that
6   we were going to willy-nilly turn over all of these payroll
7   records.
8           The other thing I will say is that all of the cases
9   that are cited by plaintiff's counsel in its motion are all
10  cases that deal with a fact pattern where the communications
11  came after court orders certifying a class.  That fact is --
12  that is not the posture of this case --
13          THE COURT:  Right.
14          MS. ALBARELLO:  -- at all.  Not the posture at all.
15          THE COURT:  So there is no case in which it was
16  deemed improper to communicate with class members before such
17  an order had been issued.
18          MS. ALBARELLO:  That is correct, your Honor.  And,
19  in fact --
20          THE COURT:  Then why doesn't this happen all the
21  time?
22          MS. ALBARELLO:  I have no idea why it doesn't
23  happen all the time.  But I will tell you this:  We all know
24  that plaintiff's counsel has been practicing in this area for
25  years.

1      THE COURT: Right.

2      MS. ALBARELLO: And yet -- and so you would think
3  that plaintiff's counsel would have cited a case that says
4  that the employer's communication with putative members at
5  this posture in a case is improper. You will find no such
6  case within their briefing.

7      MR. WERMAN: Judge, it's improper even pre-step one
8  notice. It's improper pre-Rule 23 certification. It depends
9  on the nature of the communication. And here, the purpose of
10 the communication was to compromise and undermine and moot
11 out the claims of low-wage, at-risk workers without a fair
12 communication about what the case was about, what the claims
13 were worth. The case law plainly makes that improper.

14      I can certainly go back through our own motion and
15 see whether or not any of those cases arose in a different
16 procedural setting.

17      But counsel is right. I have done probably a
18 thousand of these cases. The reason why it doesn't happen
19 all the time is because it's egregious, wrongful,
20 sanctionable conduct by defense lawyers when they do it.
21 Most lawyers know not to do it. And when they have done it,
22 we have come into court, and we have gotten corrective
23 notice. Some of them are in minute orders. But certainly we
24 have encountered it before, and there is a remedy for it.
25 And the remedy for it is what we have asked for in our

1  motion.

2  THE COURT:  Ms. Albarello, I will give you until
3  the close of business on Friday to respond to this motion.
4  Let's set it for a hearing on Monday morning at 10:00
5  o'clock.

6  MR. WERMAN:  Can you ask counsel whether or not --
7  she indicated that she is going to also, as part of her
8  end-around around the Court's supervision of this litigation,
9  is to bring in the U.S. Department of Labor.  Has she done
10 that yet?

11 THE COURT:  Why would that be necessary?

12 MR. WERMAN:  Well, she thinks that the -- there is
13 only two ways -- there is only two ways that releases that
14 she was able to get employees to sign are enforceable.  One
15 is if the Court approves it.  The other is if the Secretary
16 of Labor approves it.

17 So what she is going to do and what she intimated
18 was that she is going to try to usurp the Court's supervisory
19 authority of the case and ask probably the district director
20 of the Chicago office of the U.S. Department of Labor to
21 approve the releases.  That's what she is doing.

22 THE COURT:  That would have been a great thing to
23 do before you got sued.

24 MS. ALBARELLO:  I'm sorry, your Honor.  I didn't
25 hear you.

1    THE COURT:  Contacting the Secretary of Labor and
2 getting the Secretary of Labor involved to work with your
3 clients' staff on their wage claims would have been a great
4 thing to do before Mr. Werman's clients sued you.
5    I don't know whether -- I am not going to ask that
6 question.  I am sure we will find out.
7    Close of business on Friday for a response to this
8 motion, and then let's set it for a hearing on Monday morning
9 at 10:00 o'clock.
10    MR. WERMAN:  Thanks, Judge.
11    THE COURT:  I'm sorry.  Monday is a holiday.  You
12 are right.
13    Tuesday at 10:00 o'clock.
14    MS. ALBARELLO:  Tuesday at 10:00.  Thank you,
15 Judge.
16    MR. WERMAN:  Judge, I am going to be out of the
17 U.S. on Tuesday.
18    THE COURT:  Are you back -- when are you back?
19    MR. WERMAN:  Not until the following week.
20    THE COURT:  Then why don't we do this.  Why don't
21 we say -- why don't we ask Ms. Albarello's response be filed
22 by noon on Friday, and we will set it for Friday afternoon.
23    MS. ALBARELLO:  Thank you.
24    THE COURT:  2:00 o'clock Friday afternoon.
25    Thank you.

```
 1            MS. ALBARELLO:  Thank you.
 2                   *    *    *    *    *
 3    I certify that the foregoing is a correct transcript from the
      record of proceedings in the above-entitled matter.
 4
 5    /s/ Frances Ward                            February 13, 2019.
      Official Court Reporter
 6    F
```