```
 1                IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3

 4    JOSUE ALVARADO, on behalf of    )
      himself and all other          )
 5    persons similarly situated,    )    Docket No. 18 C 7756
      known and unknown,             )
 6                                   )
                   Plaintiff,        )
 7                                   )
              vs.                    )
 8                                   )
      INTERNATIONAL LASER            )
 9    PRODUCTS, INC.,                )
      INTERNATIONAL TONER CORP.,     )
10    and CRAIG FUNK,                )
      individually,                  )    Chicago, Illinois
11                                   )    February 26, 2019
                   Defendants.       )    10:08 a.m.
12
                  TRANSCRIPT OF PROCEEDINGS - Hearing
13            BEFORE THE HONORABLE REBECCA R. PALLMEYER

14
      APPEARANCES:
15
      For the Plaintiff:        WERMAN SALAS P.C.
16                              BY:  MR. DOUGLAS M. WERMAN
                                     MS. SARAH J. ARENDT
17                              77 West Washington, Suite 1402
                                Chicago, Illinois  60602
18

19    For the Defendants:       DiMONTE & LIZAK
                                BY:  MS. MARGHERITA M. ALBARELLO
20                                   MR. WILLIAM H. MAZUR
                                216 West Higgins Road
21                              Park Ridge, Illinois  60068

22
      Court Reporter:           FRANCES WARD, CSR, RPR, RMR, FCRR
23                              Official Court Reporter
                                219 S. Dearborn Street, Suite 2144D
24                              Chicago, Illinois  60604
                                (312) 435-5561
25                              frances_ward@ilnd.uscourts.gov
```

1        THE CLERK:  18 C 7756, Alvarado versus

2   International Laser Products for evidentiary hearing.

3        MR. WERMAN:  Good morning, Judge.

4        Doug Werman, W-e-r-m-a-n, for plaintiffs.

5        THE COURT:  Good morning.

6        MS. ARENDT:  Good morning, Judge.

7        Sarah Arendt, A-r-e-n-d-t, for the plaintiff.

8        MS. ALBARELLO:  Good morning, your Honor.

9        Margherita Albarello, A-l-b-a-r-e-l-l-o, on behalf

10  of the defendants.

11       MR. MAZUR:  Good morning, your Honor.

12       William Mazur, M-a-z-u-r, also on behalf of the

13  defendants.

14       THE COURT:  Good morning.

15       We are here on the plaintiff's motion to void

16  releases.  I have gotten written responses to that motion

17  from the defendant.  But one of the arguments that was made

18  was that it rests on Mr. Werman's statements of fact as

19  opposed to evidence, and that's the reason we have convened

20  this morning.

21       Have you had a chance to talk about whether you can

22  settle it?

23       MR. WERMAN:  No, Judge.

24       THE COURT:  Do you want to take a few minutes to

25  talk about that?

1          MS. ALBARELLO:  Your Honor, just for clarification,

2    please, when you are talking about settling, are you talking

3    about the case or settling this question?

4          THE COURT:  No, no.  I mean just this issue.  Of

5    course not the whole case.

6          MS. ALBARELLO:  No, no, no.  I have not had any

7    conversation.

8          I did -- Ms. Arendt reached out to me last week to

9    talk about whether we could get back on track with having

10   settlement negotiations of the case.

11         THE COURT:  Is that something --

12         MR. WERMAN:  What we asked for were the time and

13   pay records, which is what we asked for when the company

14   agreed to provide us the tolling agreement, which created the

15   incipient attorney-client relationship between us and the

16   potential class and collective action members.

17         Without the time and pay documents, we cannot have

18   any kind of discussions with the company about resolution.

19         THE COURT:  Well, is it worth talking about that

20   right now?  I mean, I don't know where we stand with the pay

21   records, but is it worth talking about a framework for

22   resolving either this dispute or the overall case?

23         MR. WERMAN:  Sure, Judge.  Always.

24         MS. ALBARELLO:  Yes, your Honor.

25         THE COURT:  Why don't I give you a chance to talk

1    about that among yourselves and see if you want me to be

2    involved.  I don't want to be involved unless you want me to.

3              MR. WERMAN:  That's fine.

4              MS. ALBARELLO:  Thank you.

5              THE COURT:  I'll give you few minutes.

6              MR. WERMAN:  Okay.

7              THE COURT:  Do you need to get into the

8    attorney-witness room?  Why don't I let you in the jury room.

9              MR. WERMAN:  That's fine.

10             MS. ALBARELLO:  Thank you.  Thank you, your Honor.

11        (A recess was taken at 10:10 a.m. until 11:45 a.m.)

12             THE CLERK:  18 C 7756, Alvarado versus

13   International Laser Products.

14             MR. WERMAN:  Good morning, Judge.

15             THE COURT:  Good morning.

16             I see -- well, I will let Ms. Albarello introduce

17   herself.

18             MS. ALBARELLO:  Good morning, your Honor.

19             Margherita Albarello on behalf of the defendants.

20             THE COURT:  I see fewer people in the courtroom.

21             MS. ALBARELLO:  Mr. Mazur, your Honor, who's my

22   cocounsel, he's in the washroom.

23             THE COURT:  Oh, okay.

24             MS. ALBARELLO:  He will be here momentarily.

25             MR. WERMAN:  We can get started.  Same on my side.

1    We had a lengthy meeting. The companies agreed to

2    produce certain documents that will help facilitate

3    discussions about resolution, but certainly no agreement to

4    resolve the case or what the case might resolve for.

5    I do think it would be helpful to identify on the

6    record what the documents the company has agreed to produce

7    are so there is no confusion about that.

8    THE COURT:  Sure.

9    MR. WERMAN:  I think we should talk about a

10    timeline for the production of those documents.

11    But then beyond that, we were prepared to evaluate

12    those records and see whether or not a resolution was

13    possible. We understand the company wants to have today an

14    evidentiary hearing relating to the enforceability of the

15    releases even though the last time that we were here, I think

16    the words of the Court were, at a minimum, the settlement

17    agreements are void.

18    So we are prepared to proceed today with an

19    evidentiary hearing, if the Court wants to do that.

20    What we had proposed doing, though, was, because it

21    was going to take some time to evaluate the records and for

22    us to make a proposal, that we would send defendants a

23    proposed notice that we would send to the employees and just

24    explain to them what the procedural posture of the case is,

25    why they are not receiving the checks that they thought they

1    were going to receive and for signing the settlement
2    documents which the Court has found to be void.  And if we
3    couldn't reach agreement on the form of that notice, we would
4    submit it to the Court, and you could tweak it or make edits
5    to it.

6            Otherwise, if the Court wants to indulge the
7    parties and have an evidentiary hearing, we are ready.

8            MS. ALBARELLO:  Your Honor, may I?

9            THE COURT:  Sure.

10           MS. ALBARELLO:  I am unaware -- and if I
11   misunderstand what the Court has said the two prior times we
12   have been before the Court, I apologize for that.  I do not
13   recall ever hearing the Court say that the releases are void.

14           I understand that the purpose of today was to have
15   an evidentiary hearing to determine whether or not there was
16   coercion in connection with receiving the releases from the
17   employees who signed the releases.

18           THE COURT:  Well, I guess I have a thought that,
19   depending on the language of some notice that may or may not
20   be drafted, it may be that we won't have to address that.
21   I'm just not sure, because some of the relief is overlapping
22   between the claims that would or would not -- would be
23   covered by the release and the claims that would not, and the
24   claims that would be -- or release -- aspects of the release
25   that might be enforceable and the aspects of release that

1    might not.

2              And although I'm not reluctant to hear evidence, I

3    am concerned that doing so might further polarize the

4    resolution that might be available without findings by the

5    Court, which I suspect would be advantageous for both sides.

6              I guess what I'm saying is, I don't know how long

7    it will take to get the wage and hour records.  We can talk

8    about that.  But what I would like to do is put the hearing

9    over until you have had a chance to review those and

10   potentially negotiate some language that might be acceptable

11   to both sides, without suggesting that you will

12   unquestionably be able to achieve that.  And even the notice

13   itself, depending how you draft it, I'm not sure you need to

14   use any words like "void" or other inflammatory --

15   potentially inflammatory language.

16             I don't want to inject myself any more than I need

17   to here, but I guess I would like to see if you couldn't make

18   some progress on drafting language after counsel have had a

19   chance to take a look at the records, which my understanding

20   is there is really no objection to producing at some level.

21             How much time do you think would be necessary to do

22   that?

23             MS. ALBARELLO:  Your Honor, I truly have no idea.

24             But let me tell you what we did agree to --

25             THE COURT:  Sure.

1    MS. ALBARELLO:  -- with counsel and what Mr. Mazur

2    and I learned as a result of talking with Mr. Funk, who is in

3    the courtroom.  Mr. Funk is one of the named defendants.  He

4    is the president of Laser.

5    So we understand that this is a two-company case,

6    if you will, that there is Toner and there is Laser.  They

7    are two separate companies.  We disagree with the concept

8    that these are joint employers.  That is an issue of fact.

9    Counsel understands what our position is.  We understand what

10   plaintiff's counsel's position is.

11   Nonetheless, what we have agreed to do is, we have

12   agreed to provide the time records for Toner and the time

13   records for Laser going back three years prior to the date

14   this complaint was filed through today.

15   Those time records are kept through a biometric

16   system.  We are not positive what the name of it is.  It

17   might be Kronos.  That name rings a bell with Mr. Funk, but

18   he is not positive.

19   THE COURT:  Right.

20   MS. ALBARELLO:  I am not familiar with biometric

21   timekeeping technology, but Mr. Werman has advised me -- he

22   has represented to me that those records keep to the second

23   time -- of the time that, for example, I would scan my

24   fingerprint in and scan my fingerprint out.

25   So we are prepared to collect those documents and

1    produce those to plaintiff's counsel.

2            We also are prepared to present to plaintiff's

3    counsel the pay records.  And both Laser and Toner use the

4    outside payroll service that many people do called ADP.

5            I have no idea how long it will take to get those

6    records, but what we will do is, we will make a request for

7    those records by tomorrow.

8            With regard to the biometric records, I don't know

9    who we talk to, but we will find out.  We will do that in due

10   course, and we will do our very best to make a request for

11   those records tomorrow as well.  And we will report back to

12   plaintiff's counsel about the progress we have made and what

13   the outside vendors are telling us about how long it will

14   take for them to get the records to us in the format that

15   they have asked them for.  So they are looking for it in

16   either an Excel spreadsheet type of thing or -- I can't

17   remember if they said CDS or something like that.  I have got

18   it in my notes, whatever they wanted.  So we are prepared to

19   do that.

20           Forgive me.  I'm not sure whether there was another

21   question from the Court.

22           THE COURT:  No, no.  That was my first question.

23           MS. ALBARELLO:  Okay.

24           THE COURT:  It sounds like you're -- my

25   understanding of your answer is, you are prepared to get that

1    process underway right away, but because it's out of your

2    hands, you can't tell us exactly when those documents are

3    going to be available.

4           It may be that -- well, it may be that what we

5    ought to do, then, is set a status early next week just to

6    see what you found out about it and whether it makes sense

7    for us to wait a little while longer or whether the delay is

8    such that we really do need a resolution on this other issue

9    first.

10          Would that work for you?

11          MR. WERMAN:  Yes, Judge.

12          MS. ALBARELLO:  Your Honor, I'm sorry.

13          THE COURT:  Go ahead.

14          MS. ALBARELLO:  The other thing I would like to

15   address, though, is this:  You know, we -- as your Honor is

16   aware, the settlement and release agreements that Laser

17   obtained from -- I believe, the number is 35.

18          THE COURT:  Workers.

19          MS. ALBARELLO:  People, yes.  My understanding is

20   that 34 of those people are still employed by us, and that

21   there is one individual, whose release we obtained on

22   February 6th, she is no longer an employee, but she came to

23   work because her mother worked for us.  And so when she came,

24   her mother had already signed a release, I believe.  So, of

25   course, the young woman -- her name is Natalie -- was also

1    interested in signing a release.

2         So on February 6th, the day after Mr. Funk and

3    Mr. Hernandez, et cetera, had sat in a room with these other

4    employees, this other person came forward and asked to sign a

5    release.  The document was given to her, and I believe she

6    signed it that day, I think.  But she did sign it regardless

7    of when she did.

8         I understand very clearly what your Honor's

9    position is with regard to the Fair Labor Standards Act and

10   the IM -- Illinois minimum wage law portion of the release.

11   We believe that, however, that the BIPA portion of the

12   release is enforceable, and it's called out separately in the

13   document, the amount of money that will be paid to the

14   employees for that portion of the release.

15        It is our position -- and we have all of our

16   witnesses here, all the company representatives who met with

17   the employees on February 5th -- Mr. Funk; Mr. Grek;

18   Mr. Hernandez; Mr. Riebandt, who's my law partner and who has

19   been representing Mr. Funk and his attorneys for 25, 30

20   years, who was there to explain the nature of the lawsuit

21   that Mr. Alvarado filed that was called out in the body of

22   the release.

23             THE COURT:  Right.

24             MS. ALBARELLO:  They are here to testify.

25             And we also have employee witnesses with us as

1  well, who are prepared to testify that they did not feel

2  coerced, intimidated, et cetera, in connection with signing

3  any portion of the release, and that they were well aware

4  when they signed the releases that there was a separate

5  dollar amount for the BIPA, the Biometric Information Privacy

6  Act release, and a separate dollar amount for the wage and

7  hour claims.

8      It is defendants' position that the BIPA portion of

9  the release is valid.  We would like to move forward with

10  following through on our payment to those employees of the

11  BIPA portion of the release.

12      We also would like the opportunity to seek BIPA

13  releases from our other employees.

14      Now, I represented to the Court when I was before

15  you -- I think it was February 12th -- that was when the

16  motion was presented.  And then on Friday we actually had a

17  hearing on the motion.

18      THE COURT:  Right.

19      MS. ALBARELLO:  I represented to the Court that I

20  needed some additional time to file a response in opposition

21  to the motion to void the releases.

22      THE COURT:  Right.

23      MS. ALBARELLO:  Your Honor asked if I could do it

24  in 48 hours.  I said I needed more time than that.  I'm a

25  busy practitioner.  This is not my only case.

1          Your Honor was gracious.  You granted me through

2    Friday at noon to file an opposition brief.

3          I told the Court, however, on February 12th that,

4    if the Court would grant me more time, I am happy to tell my

5    clients that they should not initiate any communications with

6    any employees --

7          THE COURT:  Right.

8          MS. ALBARELLO:  -- concerning obtaining of

9    releases, and we have kept that promise.

10          But now what we would ask your Honor to be able to

11    to do is move forward and pay these employees the monies that

12    we promised them under the BIPA portion.

13          And, your Honor, we would like to move forward and

14    obtain BIPA releases from other employees.  These would be

15    the Toner employees, who are not -- who I will represent to

16    the Court we are unaware of them having been shorted on any

17    wages at all.

18          So the reason that defendants would like to move

19    forward with this evidentiary hearing is because we would

20    like to obtain -- we would like to follow through on the BIPA

21    releases of the 35 people.  We would like to move forward to

22    obtain BIPA releases with regard to the others -- to the

23    other employees that we haven't talked to yet.  And, of

24    course, we have a number of people who are here that are

25    prepared to testify.

1            So, of course, your Honor, whatever your Honor

2 wishes, but I wanted the Court to have a full picture of our

3 position.

4            THE COURT:  Do the plaintiffs want to respond?

5            Here is my thought on that.  I can understand the

6 desire, having reached an agreement on the biometric claim,

7 to follow through and not be viewed as somehow misleading

8 people that are working for you.

9            I guess my concern, though, is that -- I am

10 guessing we are not going to be talking about a long delay.

11 I don't deal with ADP either, but I'm guessing that they are

12 going to be able to produce these records without too much

13 difficulty.

14            And that may -- that process may enable some kind

15 of global resolution that would include not only the wage

16 claims but BIPA or at least make it clear what's in and

17 what's out.

18            Now, I understand -- I'm not arguing with you.  I'm

19 sure you are telling me the truth when you say that the

20 difference between these two claims was clearly explained to

21 the employees.  But there is the possibility, it seems to me,

22 that they wanted one piece of relief that was, to their

23 knowledge, sort of a windfall, a brand-new kind of a benefit,

24 and that they were willing to agree to that -- that their

25 willingness to agree to that might somehow influence their

1    views of the wage claim.

2            I just don't like the idea that they are somehow a
3    part of the same release document.

4            Now, all of that said, I really don't want to
5    suggest to you that I'm prejudging that issue, but I do think
6    that there is a percentage, a benefit to our at least
7    attempting, in a short -- in a very short time, to see
8    whether you can make some progress on resolving this, and
9    then I am happy to reconvene.  I really don't want to delay
10   this forever.  I am happy to hear your evidence whenever.  I
11   would like not to do it right now where there is a
12   possibility that it might push people further apart.

13           MS. ALBARELLO:  Your Honor, and then next week I
14   am -- either I or Mr. -- I have a very heavy deposition
15   schedule, and I have a TRO that I have to attend this Friday
16   that I'm going to hope and try and get kicked over -- enter
17   into a standstill agreement and kick it over to sometime next
18   week.  But either I or Mr. Mazur will be available to attend
19   a --

20           THE COURT:  For a status.  Sure.

21           MS. ALBARELLO:  -- status next week.

22           And, as I say, we will reach out to ADP.  And
23   whether it's Kronos or whomever, we will dig down and find
24   out who we need to speak with and then report back to
25   plaintiff's counsel promptly.

```
 1              THE COURT:  All right.  I'm starting a relatively
 2   short trial next week, but I would have -- I would be able --
 3   it's a bench, but I would be able to hear -- you know, I'm
 4   still going to hear statuses first thing in the morning, and
 5   I can also hear it at noon, if that's better.  So tell me --
 6              MS. ALBARELLO:  Your Honor --
 7              THE COURT:  -- what time works.
 8              MS. ALBARELLO:  I'm sorry.
 9              THE COURT:  Yes.  Go ahead.
10              MS. ALBARELLO:  May I step away and just get my
11   calendar?
12              THE COURT:  Sure.  Of course.
13              MS. ALBARELLO:  Thank you.
14       (Brief pause.)
15              MR. WERMAN:  Judge, just for clarity, since what
16   counsel has stated that she wants to do and what her client
17   wants to do goes to the heart of the Court's obligation to
18   manage this proposed class action, they are not to go out and
19   continue to obtain releases until there is a resolution.
20              THE COURT:  Right.  Certainly between now and our
21   next status, that's my expectation.  Again, I think it's
22   going to be relatively prompt.
23              MR. MAZUR:  Correct me if I'm wrong, your Honor,
24   but we have something on our calendar for March 7th already.
25              THE COURT:  That's fine.
```

1          MR. MAZUR:   We are set for a pretrial.

2          THE COURT:  I think that's right.  I think that's

3      fine.

4          MR. MAZUR:  If that's okay with opposing counsel.

5          THE COURT:  Does that work for the plaintiffs?

6          MR. WERMAN:  Sure.

7          MS. ALBARELLO:  Yes, your Honor.  Thank you.

8          THE COURT:  All right.  I will see you then.

9          MS. ALBARELLO:  Same time, right?

10         MR. MAZUR:  It's at 9:00.

11         MS. ALBARELLO:  9:00?

12         THE COURT:  9:00 o'clock.

13         And you will be in touch in the meantime with

14     whatever you find out from ADP, et cetera.

15         MS. ALBARELLO:  Thank you very much.

16         THE COURT:  Thank you.

17         MR. MAZUR:  Thank you.

18         (An adjournment was taken at 12:04 p.m.)

19                          *   *   *   *   *

20     I certify that the foregoing is a correct transcript from the
       record of proceedings in the above-entitled matter.
21

22     /s/ Frances Ward_____March 8, 2019._
       Official Court Reporter
23     F

24

25